FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 14, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN K.,[1] <br><br>               Plaintiff, <br><br>    vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>               Defendant. | No. 1:18-cv-03103-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 15, 20 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 20. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 20.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On May 3, 2014, Plaintiff filed an application for supplemental security income benefits, alleging an onset date of April 22, 2014. Tr. 151-60. The application was denied initially, Tr. 93-96, and on reconsideration, Tr. 100-02. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on November 17, 2016. Tr. 36-65. On May 2, 2017, the ALJ denied Plaintiff's claim. Tr. 14-32.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 3, 2014, the application date. Tr. 19. At step two, the ALJ found Plaintiff had the following severe impairments: spine disorders, post-traumatic stress disorder, and anxiety. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* The ALJ then found Plaintiff had the RFC to perform medium work with the following limitations:

[Plaintiff] can frequently climb ramps and stairs, and can occasionally climb ladders, ropes and scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. [Plaintiff] should avoid concentrated exposure to hazards. [Plaintiff] is limited to simple routine work, involving simple instructions, and communicating simple information. He can have occasional contact with coworkers, with no teamwork or tandem tasks. He can have brief and superficial contact with the general public.

Tr. 21

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 26. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laboratory helper, hand packager, and recycler reclaimer. Tr. 27. The ALJ concluded Plaintiff was not under a disability from May 3, 2014, through May 2, 2017, the date of the ALJ's decision. Tr. 28.

On April 23, 2018, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly evaluated Plaintiff's symptom testimony; and

ORDER - 7

2.  Whether the ALJ properly considered the medical opinion evidence. ECF No. 15 at 1.

## DISCUSSION

### A. Plaintiff's Symptom Testimony

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit his symptom testimony.  ECF No. 15 at 18-20.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence.  Tr. 22.

### 1. Lack of Supporting Medical Evidence

The ALJ found Plaintiff's symptom complaints were not supported by the objective evidence.  Tr. 24.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).  Mental status examinations are objective measures of an individual's mental health.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Here, the ALJ noted Plaintiff reported disabling limitations in memory, completing tasks, concentration, understanding, and following instructions. Tr. 22 (citing Tr. 191, 196). However, the ALJ found Plaintiff's allegations were inconsistent with the record of benign mental status examinations. Tr. 24; *see* Tr. 304 (November 24, 2015: adequately groomed and dressed; no abnormal motor activity; gait and station normal; no ataxia; appears alert, oriented, cooperative; speech is spontaneous, coherent, and goal directed; is not obviously delusional or hallucinating; denies suicidal or assaultive ideation; affect is pleasant, appropriate, full ranging; mood is euthymic; no obvious impairment in memory and intellectual functioning; insight and judgment appear to be appropriate); Tr. 306 (December 21, 2015: same); Tr. 308 (January 18, 2016: same); Tr. 290 (February 24, 2016: appropriate but unkempt appearance, normal motor but poor coordination, attitude and behavior within normal limits, psychomotor normal, full range affect, anxious mood, appropriate eye contact and interactive social behavior, appropriate content of thought, normal rate and rhythm of speech, full orientation, recent and immediate memory impaired, adequate fund of knowledge, some concentration impairment, executive functioning impaired, and no insight into condition); Tr. 312 (March 17, 2016: adequately groomed and dressed; no abnormal motor activity; gait and station normal; no ataxia; appears alert, oriented, cooperative; speech is spontaneous, coherent, and goal directed; is not obviously delusional or

hallucinating; denies suicidal or assaultive ideation; affect is pleasant, appropriate, full ranging; mood is euthymic; no obvious impairment in memory and intellectual functioning; insight and judgment appear to be appropriate); Tr. 314 (April 28, 2016: same).

Plaintiff challenges the ALJ's conclusion by characterizing the ALJ's conclusion as "unreviewable" for failure to cite specific findings. ECF No. 15 at 19. However, a review of the specific record pages cited by the ALJ, as discussed *supra*, as well as the ALJ's summary of the medical evidence at Tr. 22-24, indicates Plaintiff's treatment providers documented minimal abnormal findings in Plaintiff's mental status examinations. Tr. 24. The ALJ reasonably concluded that Plaintiff's mental status examinations did not support the level of disabling limitations in memory, completing tasks, concentration, understanding, and following instructions that Plaintiff alleged. Tr. 22.

The ALJ also noted Plaintiff reported disabling limitations in lifting, standing, and performing postural positions due to back pain. Tr. 22 (citing Tr. 172, 191-92, 196). However, the ALJ found Plaintiff's physical examination evidence did not support the level of impairment he alleged. Tr. 23-24; *see* Tr. 274-80 (February 19, 2015: examination showed normal objective imaging results, no difficulty ambulating or moving in examination room, no obvious pain behavior, neck and back range of motion within normal limits, normal motor

strength, and normal muscle bulk and tone); Tr. 306 (December 21, 2015: Plaintiff reported no joint or muscle pain; gait and station normal); Tr. 312 (March 17, 2016: same); Tr. 314 (April 28, 2016: same). The ALJ reasonably concluded that the medical evidence did not support Plaintiff's symptom complaints. Tr. 23-24.

### 2. Failure to Seek Treatment

The ALJ found Plaintiff's symptom complaints were inconsistent with his failures to seek treatment. Tr. 24. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may serve as a basis to discount the claimant's reported symptoms, unless there is a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Here, the ALJ observed that Plaintiff alleged disabling limitations in lifting, standing, and performing postural positions due to back pain. Tr. 22 (citing Tr. 172, 191-92, 196). However, the ALJ found that Plaintiff did not seek consistent medical treatment for back pain. Tr. 24. On February 19, 2015, Plaintiff was diagnosed with low back pain with no radiculopathy during a consultative examination. Tr. 23; *see* Tr. 279. During treatment appointments in 2015 and 2016, Plaintiff reported no muscle or joint pains. Tr. 24; *see* Tr. 306 (December 21, 2015); Tr. 312 (March 17, 2016); Tr. 314 (April 28, 2016). The ALJ noted there were no other treatment records related to back pain after April 2016. Tr. 24.

Plaintiff challenges the ALJ's conclusion by implying the ALJ erred in failing to consider Plaintiff's back pain in formulating the RFC. ECF No. 15 at 19. However, the ALJ did consider Plaintiff's back pain throughout the ALJ's findings and the RFC accounts for back pain by incorporating limitations to medium work and postural limitations into the RFC. Tr. 21, 24-25. Plaintiff's argument fails to identify specific error in the ALJ's findings regarding Plaintiff's infrequent treatment. ECF No. 15 at 19. The ALJ reasonably concluded that the level of limitation Plaintiff alleged was caused by his back pain was not supported by the inconsistent treatment he sought. Tr. 24. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 3. Failure to Follow Treatment Recommendations

The ALJ found Plaintiff's symptom complaints were inconsistent with his failure to follow treatment recommendations. Tr. 24. "A claimant's subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment." *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citations omitted). Failure to assert a reason for not following treatment "can cast doubt on the sincerity of the claimant's pain testimony." *Id*.

Here, the ALJ noted Plaintiff reported disabling limitations in memory, completing tasks, concentration, understanding, and following instructions due to

posttraumatic stress disorder. Tr. 22 (citing Tr. 191, 196). However, the ALJ observed Plaintiff ceased taking his medication and attending counseling. Tr. 24. Plaintiff began receiving treatment in May 2015. Tr. 23; *see* Tr. 292-95. Plaintiff started taking Prazosin and sertraline in September 2015. Tr. 23; *see* Tr. 301. In March 2016, Plaintiff reported that he stopped taking Prazosin. Tr. 23; *see* Tr. 312. Plaintiff stopped treatment after April 2016. Tr. 23; *see* Tr. 314-16. Plaintiff reengaged in treatment in November 2016, but he reported he stopped taking medications. Tr. 23; *see* Tr. 294. Plaintiff did not challenge this finding. ECF No. 15 at 18-20. The ALJ reasonably concluded that Plaintiff's alleged limitations were inconsistent with his failure to follow treatment recommendations. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 4. Daily Activities

The ALJ found Plaintiff's symptom complaints were inconsistent with his daily activities. Tr. 24. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ noted Plaintiff reported disabling limitations in lifting, standing, postural positions, and walking no more than 30 minutes before needing to rest. Tr. 22 (citing Tr. 191, 196). However, the ALJ observed Plaintiff's daily activities included skateboarding at the local park and riding and building bicycles. Tr. 24; *see* Tr. 49, 300. The ALJ reasonably concluded that these activities were inconsistent with the level of physical impairment Plaintiff alleged. Tr. 24. Additionally, the ALJ noted Plaintiff reported disabling limitations in memory, completing tasks, concentration, understanding, and following instructions. Tr. 22 (citing Tr. 191, 196). However, the ALJ observed Plaintiff reported his daily activities included cooking from recipes, going to the library, spending 4-5 hours per day on the Internet researching things, watching videos, and participating in religious studies. Tr. 24; *see* Tr. 49, 193, 288, 300, 314. The ALJ reasonably concluded that these activities were inconsistent with the level of mental impairment Plaintiff alleged. Tr. 24.

Plaintiff challenges the ALJ's finding by asserting in a conclusory manner that "there is no indication of what about these activities was inconsistent with his

level of impairment." ECF No. 15 at 19-20. However, Plaintiff fails to identify

specific error in the ALJ's analysis. The ALJ may discount a claimant's symptom

claims when the claimant reports participation in everyday activities that

"contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-

13. Here, the ALJ identified Plaintiff's specific alleged impairments and noted

specific activities that indicated Plaintiff was less limited than he alleged. Tr. 22,

24. This was a clear and convincing reason to give less weight to Plaintiff's

subjective symptom testimony.

### 5. *Lack of Expert Corroboration*

The ALJ found Plaintiff's symptom reporting was undermined by the failure

of any medical expert to render a corroborating opinion. Tr. 24. In evaluating a

claimant's symptom testimony, the ALJ must consider whether the statements are

"consistent with … the other evidence" in the record. SSR 16-3P, 2016 WL

1119029, at *6. Plaintiff challenges the ALJ's finding based on an assumption that

the ALJ erred in interpreting the medical opinion evidence. ECF No. 15 at 18-19.

However, for the reasons discussed *infra*, the ALJ's interpretation of the medical

evidence is rational and based on substantial evidence. The ALJ reasonably

concluded that Plaintiff's symptom allegations were not supported by the medical

opinion evidence, discussed *infra*. Even if this finding was error, such error would

be harmless because the ALJ provided other clear and convincing reasons to give

less weight to Plaintiff's subjective symptom complaints. *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record"). Plaintiff is not entitled to remand on these grounds.

## B. Medical Opinion Evidence

Plaintiff challenges the ALJ's consideration of the medical opinions of Jan Lewis, Ph.D.; Christmas Covell, Ph.D.; Erum Khaleeq, M.D.; Tae-Im Moon, Ph.D.; and Alysa Ruddell, Ph.D. ECF No. 15 at 6-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Lewis

Dr. Lewis reviewed the record, determined Plaintiff had the medically determinable impairments of spine disorder and anxiety disorder, and opined Plaintiff had moderate limitations in his ability to understand and remember detailed instructions; that Plaintiff was capable of simple, routine tasks and some semiskilled tasks; that Plaintiff was moderately limited in his ability to carry out short and simple instructions; that Plaintiff was moderately limited in his ability to

carry out detailed instructions; that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; that Plaintiff was moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them; that Plaintiff was moderately limited in his ability to complete and normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; that Plaintiff was able to attend to and persist on simple and some semiskilled tasks with occasional decreased efficiency due to symptoms; that Plaintiff was moderately limited in his ability to interact appropriately with the public; that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors; that Plaintiff was able to carry out basic social interaction in a work setting with minimal intrusive supervision; that Plaintiff could interact but not collaborate with coworkers; that Plaintiff could have infrequent, routine, superficial public contact; that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting; that Plaintiff's decreased emotion regulation mandated a predictable work setting with few/infrequent changes in expectations; and that Plaintiff's diminished tolerance for stress will episodically interfere with productivity but not preclude it. Tr. 83-84, 87-89. The ALJ gave this opinion great weight. Tr. 25.

1    Plaintiff does not clearly assign error to the ALJ's determination that Dr.

2  Lewis' opinion was entitled to great weight.  ECF No. 15 at 6-9.  Rather, Plaintiff

3  argues that Dr. Lewis' credited opinion should have compelled a finding of

4  disability.  ECF No. 15 at 6-9.  Plaintiff notes that Dr. Lewis opined that Plaintiff

5  would have "occasional decreased efficiency," and that "occasional" is a

6  vocational term meaning up to one-third of the time.  *Id.* at 7 (citing POMS DI

7  25001.001(A)(34)).  Plaintiff also notes the vocational expert testified that an

8  employee who is off task more than 10% of the day could not maintain

9  employment.  *Id.* (citing Tr. 61).  Plaintiff asserts the ALJ should have found this

10  opinion to be work preclusive.  *Id.*

11    Plaintiff's argument conflates "decreased efficiency" with "off task,"

12  without citation to evidence in the record or legal authority to indicate these terms

13  have the same meaning.  ECF No. 15 at 6-9.  Instead, Dr. Lewis opined Plaintiff's

14  "[d]iminished tolerance for stress will episodically interfere with productivity, but

15  not preclude it."  Tr. 89.  "[T]he ALJ is responsible for translating and

16  incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec.*

17  *Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  Where evidence is subject to more

18  than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*, 400

19  F.3d at 679.  The ALJ reasonably incorporated Dr. Lewis' opinion into the RFC by

20  limiting Plaintiff to simple routine work, involving simple instructions, and

communicating simple information. Tr. 21. Furthermore, when questioned about how the jobs identified by the vocational expert would assess productivity, the vocational expert testified that the jobs identified as consistent with the ALJ's RFC formulation "are not production requirement jobs." Tr. 63. The ALJ's incorporation of Dr. Lewis' opinion into the RFC and ultimate nondisability finding is reasonable and is supported by substantial evidence.

### 2. Dr. Khaleeq

Dr. Khaleeq examined Plaintiff on March 7, 2015, diagnosed Plaintiff with posttraumatic stress disorder, and opined Plaintiff could perform simple and repetitive tasks; that Plaintiff could experience difficulty doing detailed and complex tasking; that Plaintiff could accept instructions from supervisors; that Plaintiff could interact with coworkers and the public; that Plaintiff could perform work activities on a consistent basis provided he is able to maintain attention; that Plaintiff could maintain attendance in the workplace and complete a normal workday/workweek although he may get interrupted from his underlying anxiety and believes that people are judging him; and that Plaintiff could get interrupted from the usual stress encountered in the workplace. Tr. 282-85. The ALJ gave this opinion moderate weight. Tr. 25. Because Dr. Khaleeq's opinion was

contracted[2] by Dr. Moon, Tr. 244-45, the ALJ was required to provide specific and legitimate reasons to discredit Dr. Khaleeq's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found Dr. Khaleeq's opinion was entitled to less weight because it was rendered before Plaintiff sought treatment for his conditions. Tr. 25. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Here, the ALJ noted that Dr. Khaleeq's examination was performed prior to Plaintiff starting counseling and medication management at Columbia Wellness. Tr. 25; *compare*

---

[2] Plaintiff characterizes Dr. Khaleeq's opinion as uncontradicted. ECF No. 15 at 11. However, Dr. Khaleeq's opinions that Plaintiff could complete a normal workday/workweek and could interact with coworkers are inconsistent with Dr. Moon's opinion that Plaintiff had marked limitations in these activities. Tr. 244-45. Contrary to Plaintiff's characterization, ECF No. 15 at 10, Dr. Khaleeq's observation that Plaintiff may be interrupted by anxiety does not equate to a finding that Plaintiff would be unable to maintain regular attendance.

ORDER - 23

Tr. 282 (Dr. Khaleeq's evaluation performed on March 7, 2015) *with* Tr. 292 (Plaintiff's intake assessment performed on May 27, 2015) *and* Tr. 301 (medication management started on September 23, 2015). The ALJ further noted that because Dr. Khaleeq's examination predated Plaintiff's treatment, Dr. Khaleeq was unable to review Plaintiff's treatment record of normal mental status examinations and improvement with medication. Tr. 25; *see* Tr. 306 (December 21, 2015: adequately groomed and dressed; no abnormal motor activity; gait and station normal; no ataxia; appears alert, oriented, cooperative; speech is spontaneous, coherent, and goal directed; is not obviously delusional or hallucinating; denies suicidal or assaultive ideation; affect is pleasant, appropriate, full ranging; mood is euthymic; no obvious impairment in memory and intellectual functioning; insight and judgment appear to be appropriate); Tr. 308 (January 18, 2016: same); Tr. 312 (March 17, 2016: same); Tr. 314 (April 28, 2016: same; Plaintiff reported improved symptoms with treatment).[3] The ALJ reasonably

---

[3] Plaintiff asserts the ALJ failed to cite any evidence in support of the conclusion that Plaintiff's mental status examinations were largely normal. ECF No. 15 at 12. Plaintiff appears to disregard the ALJ's substantial string cite at the end of the ALJ's discussion of Dr. Khaleeq's opinion, which cited to evidence in the record

ORDER - 24

concluded that Dr. Khaleeq's opinion was entitled to less weight because Dr. Khaleeq's examination predated this record of improvement.  Tr. 25.

### 3.  Dr. Moon and Dr. Ruddell

Dr. Moon examined Plaintiff on April 7, 2014, diagnosed Plaintiff with posttraumatic stress disorder, and opined Plaintiff had moderate limitations in his ability to understand, remember, and persist in tasks by following very short and simple instructions; moderate limitations in his ability to understand, remember, and persist in tasks by following detailed instructions; moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; moderate limitations in his ability to learn new tasks; moderate limitations in his ability to adapt to changes in a routine work setting; moderate limitations in his ability to be aware of normal hazards and take appropriate precautions; moderate limitations in his ability to ask simple questions or request assistance; marked limitations in his ability to communicate and perform effectively in a work setting; marked limitations in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms; marked limitations in his

_____

documenting normal mental status examinations, Tr. 25, as well as the ALJ's detailed summary of the medical evidence at Tr. 22-24.

ORDER - 25

ability to maintain appropriate behavior in a work setting; and moderate limitations in his ability to set realistic goals and plan independently. Tr. 242-45.

Dr. Ruddell examined Plaintiff on February 24, 2016, diagnosed Plaintiff with posttraumatic stress disorder and anxiety, and opined Plaintiff had moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; marked limitations in his ability to learn new tasks; moderate limitation in his ability to perform routine tasks without special supervision; marked limitation in his ability to adapt to changes in a routine work setting; moderate limitations in his ability to make simple work-related decisions; moderate limitations in his ability to be aware of normal hazards and take appropriate precautions; moderate limitations in his ability to ask simple questions or request assistance; moderate limitations in his ability to communicate and perform effectively in a work setting; moderate limitations in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms; and marked limitations in his ability to set realistic goals and plan independently. Tr. 287-91.

The ALJ gave these opinions moderate weight. Tr. 26. Because Dr. Moon's and Dr. Ruddell's opinions were contradicted by Dr. Lewis, Tr. 87-89, and Dr.

Robinson, Tr. 72-74, the ALJ was required to provide specific and legitimate reasons to discredit these opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found these opinions were inconsistent with the medical evidence. Tr. 25. An ALJ may reject limitations "unsupported by the record as a whole." *Batson*, 359 F.3d at 1195. Here, the ALJ found that the moderate and marked limitations Dr. Moon and Dr. Ruddell opined were inconsistent with Plaintiff's longitudinal record of benign mental status examinations and progress notes documenting improvement with treatment. Tr. 25; *see* Tr. 306 (December 21, 2015: adequately groomed and dressed; no abnormal motor activity; gait and station normal; no ataxia; appears alert, oriented, cooperative; speech is spontaneous, coherent, and goal directed; is not obviously delusional or hallucinating; denies suicidal or assaultive ideation; affect is pleasant, appropriate, full ranging; mood is euthymic; no obvious impairment in memory and intellectual functioning; insight and judgment appear to be appropriate); Tr. 308 (January 18, 2016: same); Tr. 312 (March 17, 2016: same); Tr. 314 (April 28, 2016: same; Plaintiff reported improved symptoms with treatment).[4] The ALJ reasonably

---

[4] Plaintiff again asserts the ALJ failed to cite any evidence in support of this conclusion, while appearing to disregard the ALJ's substantial string cites and summary of the medical evidence. ECF No. 15 at 13; *see* Tr. 22-24, 26.

concluded that Plaintiff's treatment notes did not support the level of impairment Dr. Moon and Dr. Ruddell opined.  Tr. 25.  This was a specific and legitimate reason to give these opinions less weight.

Second, the ALJ found these opinions were inconsistent with Plaintiff's daily activities.  Tr. 25-26.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 541, 601-02 (9th Cir. 1999).  Here, the ALJ noted Plaintiff's daily activities included conducting weekly Bible studies, engaging in door-to-door proselytizing, going to the library, and going shopping.  Tr. 26; *see* Tr. 49, 194, 288, 314.  The ALJ found that these activities demonstrated Plaintiff had the ability to be in public and to engage in step-by-step processes.  Tr. 26.  The ALJ reasonably concluded that Plaintiff's activities were inconsistent with the level of impairment Dr. Moon and Dr. Riddell opined.  Tr. 25-26.  This was a specific and legitimate reason to give these opinions less weight.

Plaintiff offers several of his own reasons as to why he believes the opinions of Dr. Moon and Dr. Ruddell should have been given more weight.  ECF No. 15 at 13-17.  Plaintiff essentially invites this Court to reweigh the evidence.  The Court "may neither reweigh the evidence nor substitute its judgment for that of the Commissioner."  *Blacktongue v. Berryhill*, 229 F. Supp. 3d 1216, 1218 (W.D. Wash. 2017) (citing *Thomas*, 278 F.3d at 954); *see also Tommasetti v. Astrue*, 533

F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). As discussed *supra*, the ALJ's interpretation of the evidence was reasonable. Plaintiff is not entitled to remand on these grounds.

### 4. Dr. Covell

Dr. Covell reviewed the reports of Dr. Moon and Dr. Teal[5] on April 8, 2014, and opined Plaintiff had moderate limitations in his ability to understand, remember, and persist in tasks by following very short and simple instructions; moderate limitations in his ability to understand, remember, and persist in tasks by following detailed instructions; moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; moderate limitations in his ability to learn new tasks; moderate limitations in his ability to adapt to changes in a routine work setting; moderate limitations in his ability to be aware of normal

---

[5] Dr. Teal performed a consultative examination on June 8, 2011. Tr. 252-56. The ALJ noted Dr. Teal's report in the record but concluded "[t]here is not a basis to afford these opinions more than little weight" because the opinions predated Plaintiff's alleged onset date by several years and did not reflect his functioning during the relevant period. Tr. 26.

hazards and take appropriate precautions; moderate limitations in his ability to ask simple questions or request assistance; marked limitations in his ability to communicate and perform effectively in a work setting; marked limitations in his ability to maintain appropriate behavior in a work setting; marked limitations in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms; and moderate limitations in his ability to set realistic goals and plan independently. Tr. 248-50. The ALJ did not discuss or assign a specific level of weight to Dr. Covell's opinion. Tr. 25-26.

The ALJ must evaluate every medical opinion received according to a list of factors set forth by the Social Security Administration. 20 C.F.R. § 416.927(c). These factors apply when evaluating the opinions of state medical consultants. 20 C.F.R. § 416.913a(b). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Here, Dr. Covell's opinion predated Plaintiff's alleged onset date by approximately two and a half weeks and discusses the impairments at issue in this case, so the ALJ erred in failing to discuss Dr. Covell's opinion.

The Commissioner asserts this error is harmless. ECF No. 20 at 18-19. The harmless error analysis may be applied where even a treating source's opinion is

disregarded without comment. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). An error is harmful unless the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). However, *Stout* does not preclude the reviewing court from considering other factors in the harmlessness analysis, including whether the omitted evidence was cumulative of other testimony. *Molina*, 674 F.3d at 1119. "[I]f an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations." *Id.* at 1121. As the Ninth Circuit explained in the context of duplicative lay witness testimony,

> A reviewing court's refusal to consider whether the ALJ's reasoning applies to undiscussed [] testimony is contrary not only to our case law holding that errors are harmless if they are 'inconsequential to the ultimate nondisability determination,' … but also to the long-settled rule that we will not set aside the denial of a disability claim unless 'the Secretary's findings are not supported by substantial evidence *in the record as a whole*.'

*Id.* (internal citations omitted).

Here, Dr. Covell's opined limitations are identical to those opined by Dr. Moon. *Compare* Tr. 249 *with* Tr. 244-45. Dr. Covell's opinion was based only on a review of reports by Dr. Moon and Dr. Teal. Tr. 248. For the reasons discussed *supra*, the ALJ gave specific and legitimate reasons to give less weight to Dr.

Moon's opinion. The ALJ gave Dr. Teal's report no more than little weight because it did not reflect Plaintiff's functioning during the relevant period. Tr. 26. Therefore, Dr. Covell's opinion was not only duplicative of Dr. Moon's opinion but was also based only on discredited medical opinion evidence. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that where the ALJ provided clear and convincing reasons to discredit the claimant's subjective complaints, it follows that the ALJ also gave germane reasons to reject the claimant's wife's similar testimony); *see also Paulson v. Astrue*, 368 Fed. App'x 758, 760 (9th Cir. 2010) (unpublished) (an ALJ may reject an opinion that is based heavily on another physician's properly discredited opinion). Because Dr. Covell's opinion was only based on and is duplicative of discredited evidence, the ALJ's failure to specifically discuss her opinion is inconsequential to the ultimate nondisability determination in the context of the record as a whole. *Molina*, 674 F.3d at 1122. Because the ALJ's error is harmless, the Court may not reverse the ALJ's decision on these grounds. *Id.* at 1111.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

ORDER - 32

2. Defendant's Motion for Summary Judgment, ECF No. 20, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED June 14, 2019.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 33